**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

VOLVIK USA INC., a Florida corporation,       CASE NO.: 22-CV-01405-WWB-DAB
and VOLVIK INC., a Korean corporation,

     *Plaintiffs*,

v.

SOO YON JEON SHIN, an individual,
JAMES EUNSUK CHOI, an individual, and
FORWARD MOTION CORPORATION, a
California Corporation

     *Defendants*.

_____/

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants, Soo Yon Jeon Shin ("Ms. Shin"); James Eunsuk Choi ("Choi"); and

Forward Motion Corporation ("Forward Motion"), by and through the undersigned counsel,

and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby file this

Motion to Dismiss Plaintiffs, Volvik USA, Inc. ("Volvik USA") and Volvik Inc.'s ("Volvik

Korea") September 30, 2022 Amended Complaint (the "Complaint").

## I.  INTRODUCTION

This is an unauthorized action asserted by Volvik USA at the behest of one of

Volvik USA's 50% shareholders, Volvik Korea.  The Complaint lodges claims against

Volvik USA's other 50% shareholder, Soo Yon Jeon Shon (Ms. Shin), Mr. Choi, a former

employee of Volvik USA, and Forward Motion, a vendor utilized by Volvik USA to

purchase goods that Volvik Korea failed to deliver to Volvik USA. In February 2022, Ms.

Shin, the widow of Dong Hwan Shin (Mr. Shin) acquired her husband's 50% interest in

Volvik USA. (Compl. ¶18). The remaining 50% interest in Volvik USA is held by Volvik

Korea. (Compl. ¶12). Beginning in 2012 and up until Mr. Shin's death in February 2022, Volvik Korea and Mr. Shin jointly owned Volvik USA. (Compl. ¶11).

In 2012, the two companies entered into a Business Agreement governing the relationship whereby Volvik Korea was to provide golf balls and other related accessories to Volvik USA to distribute in certain territories, including the United States. (Compl, Ex. A). Mr. Shin was responsible for operating the day-to-day activities of Volvik USA in the United States serving as both a Director and the Company's President until his death. (Compl. ¶17).  However, since Mr. Shin's death, Volvik Korea has set out on a course to exclude his widow, Ms. Shin, from the Company's operations, filed this lawsuit and is seeking to deprive her of the 50% interest in Volvik USA she acquired from her husband without any basis in fact or law.  The true motive of Volvik Korea, to oust Ms. Shin, is demonstrated by the fact pattern set forth in the Complaint. The Complaint is replete with inconsistent allegations regarding Ms. Shin's purported conduct and serves as a kitchen sink style pleading asserting eight claims against the three Defendants which are not only duplicative, but contain severe pleading deficiencies which mandate dismissal.

Of overriding concern is the appearance that Volvik Korea, in an unauthorized usurpation, is using Volvik USA as a co-plaintiff to assert 4 counts against the Defendants. This is despite the Complaint alleging a conflict between the Plaintiff companies and an existing breach of the attached Business Agreement between Volvik Korea and Volvik USA. The claims brought by Volvik USA appear to be wholly Volvik Korea's derivative claims.  Volvik Korea has disguised the derivative claims as direct claims by Volvik USA after assuming control of the company in contravention of Florida law and removing Ms.

2

Shin from the business. In this manner, Volvik Korea is utilizing Volvik USA to do its bidding.

As evidenced from the Complaint, Volvik Korea takes issue with Ms. Shin's participation in the business. The Complaint alleges no existing bylaws or a shareholder's agreement, thus, Florida's Business Corporation Act governs Volvik USA and the Parties' conduct. (Compl. ¶17). As demonstrated herein, Florida law establishes that Ms. Shin has been improperly removed from the business and the claims against her and the other defendants are insufficient. The claims by Volvik Korea under the Lanham Act and for tortious interference also fail to state a claim because they are either contradicted by the exhibits attached to the Complaint or are insufficiently pled.

## II.   PROCEDURAL BACKGROUND

On August 8, 2022, Plaintiffs filed their original complaint in this Action (the "Original Complaint"). The Original Complaint contained 11 counts against the Defendants for: Accounting (Count I); declaratory relief (Count II); breach of fiduciary duty against Ms. Shin (Count III); Breach of fiduciary duty against Mr. Choi (Count IV); conversion (Count V); money had and received (Count VI); unjust enrichment (Count VII); trademark infringement (Count VIII); unfair competition and false designation of origin (Count IX); federal trademark dilution (Count X); and tortious interference (Count XI).

After counsel conferred regarding Defendants' intention to file a motion to dismiss the Original Complaint, on September 30, 2022, Plaintiffs filed the amended operative Complaint [D.E. 25]. The Complaint removed the 3 counts for: money had and received, unjust enrichment and conversion. The Complaint contains various other amendments and now consists of 8 counts:  Accounting (Count I); Declaratory Relief (Count II); Breach

of Fiduciary Duty against Ms. Shin (Count III); Breach of Duties Owed against Mr. Choi (Count IV); trademark infringement (Count V); unfair competition and false designation of origin (Count VI); federal trademark dilution (Count VII); tortious interference (Count VIII).

### III.   FACTUAL BACKGROUND

Volvik Korea is a Korean golf equipment company manufacturer. (Compl. ¶10). Volvik USA is the distribution arm of Volvik Korea's United States, Canadian, Puerto Rican, and Caribbean markets. (Compl. ¶¶11,14). Volvik USA is a Florida corporation that was owned equally (50%/50%) by Volvik Korea and the late Dong Hwan Shin ("D. Shin"). (Compl. ¶12). Under the "Business Agreement," Volvik USA was granted exclusive rights to import, distribute, and sell Volvik golf products in these territories. (Compl. ¶14; Comp. Ex. A).

From its formation until his death on February 24, 2022, D. Shin exercised management responsibilities over Volvik USA and served as one of the Company's directors and its president. (Compl. ¶¶17,18). At the time of D. Shin's death, there was another director, Kyung Ahn Moon ("Moon") (Compl. ¶20).  From its inception, Volvik USA has not operated under any formal bylaws, shareholders' agreements, or any other governing documents. (Compl. ¶17). There are no governing documents that require a specific number of Directors and the Complaint is devoid of any such allegations.

### A.   Corporate Actions Taken Following the Death of Mr. Shin Between February 2022 and July 2022

The Complaint alleges that Ms. Shin was appointed as President through a Joint Written Action which is not attached to the Complaint. (Compl. ¶22).  However, according to the Complaint, the remaining Director, who could authorize appointment of officers under Florida law, was Moon. (Compl. ¶20). Plaintiffs allege Ms. Shins' appointment was

under false pretenses and invalid because the Board lacked a quorum. (Compl. ¶¶22, 24). The Complaint contains no allegations that the Company must be governed by two directors for a quorum. Florida law requires a corporation to maintain only one director.[1]

The Complaint continues its inconsistencies by alleging Ms. Shin executed documents "in her purported capacity as director…", but Exhibit B attached to the Complaint demonstrates she reported to the State of Florida her position as "President." The Company already had a seated director, Mr. Moon. (Compl. ¶20). Yet, the allegations demonstrate a litany of complaints against only Ms. Shin, based on her appointment via a "Joint Written Action." Strikingly absent from the Complaint are any actions or conduct taken by Moon between the date of Ms. Shin's appointment as President in or around February 2022 and her removal by a Board comprised of Moon and an improperly appointed director, Kidong Jang ("Jang") on July 26, 2022. (Compl. Ex. D, E). Because Volvik USA has no governing documents specifying the number of directors or requiring two directors, there was no vacant board seat for Mr. Jang to fill.

### B.    Volvik Korea's Breach of the Business Agreement

The Complaint alleges that Volvik USA owes Volvik Korea approximately $2.8 million for golf products of which $1.8 million is past due. (Compl. ¶32). Volvik USA had 180 day payment terms. (Compl. ¶15). On July 15, 2022, Volvik Korea sent a demand for payment to Volvik USA. (Compl. ¶34; Compl. Ex. C).

The Business Agreement provides in pertinent part:

[I]f a dispute arises regarding the terms, termination, non-renewal, or expiration of this Agreement ("Dispute", Volvik, Inc. shall continue to supply

---

[1] "A board of directors must consist of one of more individuals, with the number specified in or fixed in accordance with the articles of incorporation or bylaws." *See* Fla. Stat. §607.0803.

to Volvik USA exclusively and Volvik USA shall continue to distribute the Products to at least the same extent that they supplied and distributed the Products immediately before the Dispute and until the Dispute is finally resolved through appeal.

(Compl. Ex. A, Art. 8.5).[2]

Under the Business Agreement, the aggrieved party must provide the other party 60 days notice to cure any default. (Compl., Ex. A, Art. 8.2). The Complaint does not allege Volvik Korea terminated the Business Agreement. Volvik Korea has failed to comply with its obligations under the Business Agreement and despite its alleged contractual dispute with a business in which it owns a 50% interest, chose to file claims against the Defendants that cannot be pursued based on the allegations pled and applicable law.

### C.    Volvik USA Is Forced to Seek an Alternative Golf Ball Supplier

Pursuant to the Business Agreement which, according to the Complaint, remains in effect, Volvik USA retains the license to utilize the Volvik trademark and utilize third party manufacturers:

In addition, Volvik, Inc. further grants Volvik USA an exclusive license to use the Trademark and develop and manufacture golf related products and gears from third party manufacturers ("OEM Goods") and sell and distribute such OEM Goods in the Territory.

(Compl, Ex. A, Art. 2.2).

Volvik USA was permitted under the Business Agreement to purchase golf products from an alternative source, Defendant, Forward Motion. (Compl. ¶53; Compl. Ex. A).

---

[2] The Original Complaint admitted that Volvik Korea breached the terms of the "Business Agreement" and is "at least temporarily, no longer supplying golf balls to Volvik USA." (Original Compl. ¶33; Compl. Ex. A). This allegation was removed from the amended complaint.

The Complaint alleges Volvik USA planned to label the golf balls ordered through Forward Motion as "Tour (Vivid Pro)." (Compl. ¶56). However, the Complaint establishes the golf balls ordered from Forward Motion have yet to be available on "retailer's shelves." (Compl. ¶¶56, 64). Volvik Korea contends the "Tour Vivid Pro" mark's use of the word "Vivid" is an infringement of its "Volvik" trademarks including: "Volvik" "Volvik Vivid" "Volvik Vivid XT" and "Volvik VividXT AMT." (Compl. ¶58). First, the Business Agreement provided Volvik USA with a license to use the Volvik Mark. Second, the Complaint fails to allege infringement in interstate commerce.  (Compl.¶64).

**D.    Improper and Secret Removal of Ms. Shin by Volvik USA Without Authority**

Moon served as the Company's sole director during the 5 month timespan of the alleged improper conduct by Ms. Shin. (Compl. ¶¶20, 45).  Five months after Mr. Shin's death, on July 26, 2022, Moon, in contravention of Florida law, purported to appoint Kidong Jang ("Jang") to fill a "vacant" position on the Board that did not exist pursuant to Florida law. (Compl. ¶45). On that same date, with no Notice of Shareholders, Moon resigned but not before he appointed another director as his replacement, Seungseok Hong ("Hong") who was serving as the CEO of Volvik Korea. (Compl. Ex. C, D). These appointments were contrary to Florida law and are void. They were taken to secretly remove Ms. Shin, a 50% owner, from her position as President.

## IV.    <u>MEMORANDUM OF LAW</u>

### A. <u>Applicable Standard</u>

"A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1342 (S.D. Fla. 2021). "A complaint must contain a short and plain statement demonstrating an entitlement to relief,

and the statement must 'give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests."' *Edwards v. Cornelius*, No. 6:11-cv-1630-Orl-36DAB, 2012 U.S. Dist. LEXIS 79587, at *8 (M.D. Fla. June 8, 2012) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2507, 168 L. Ed. 2d 179 (2007)).

"In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Advisors Excel, L.L.C. v. Scranton*, No. 14-60558-CIV-MIDDLEBROOKS, 2014 U.S. Dist. LEXIS 199141, at *2 (S.D. Fla. Sep. 15, 2014); *see also Huggins v. Marriott Ownership Resorts, Inc.*, 2008 U.S. Dist. LEXIS 14805, 2008 WL 552590 at *2 (M.D. Fla. Feb. 27, 2008). "That is, the complaint 'must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 570 (2007)). "'Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" *Id*. (citing *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

"When considering a motion to dismiss, in addition to the allegations in the complaint, the district court also considers 'the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments,' and where those exhibits contradict the complaint's allegations, *the exhibits control*. *Morris v. Environ Towers I Condo. Ass'n*, Civil Action No. 18-60586-Civ, 2018 U.S. Dist. LEXIS 103923, at *7-8 (S.D. Fla. June 21, 2018)

(quoting *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013)) (emphasis supplied).

**V.      VOLVIK USA'S CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED**

**A.      Volvik USA's Counts I, II and III Against Defendants May Only Be Asserted by Volvik Korea as Derivative Claims[3]**

The Complaint alleges that Volvik USA is owned equally by two shareholder factions. (Compl. ¶12). The allegations demonstrate a dispute regarding Volvik USA's management and business dealings between the shareholder factions. The Complaint creates an unusual and untenable situation in which Volvik USA is directly suing its past president (Shin), former employee (Choi) and a vendor (Forward Motion) for actions **_taken by Volvik USA_** while Shin and Choi were alleged to have been conducting Volvik USA's affairs. The circumstances presented unquestionably demonstrate that Volvik USA does not have authority to assert direct claims **_for its own corporate actions_** taken under the direction of Ms. Shin and the then-existing non-party director, Moon. The only possible claim is a derivative claim by Volvik Korea standing in the shoes of Volvik USA, to assert causes of action based upon harm allegedly caused by Shin to Volvik USA.

Volvik USA does not have authority to maintain direct claims. The Complaint allegations demonstrate that Volvik USA is without authority to bring a direct suit against the Defendants because: (1) there was no vacancy on the Board of Directors when Moon appointed Jang (Compl.¶17,20); (2) Florida law requires a corporation maintain only one director and there is no governing document providing for two directors. Fla. Stat.

---

[3] Ms. Shin is also separately moving to dismiss Counts I, II and III against her, as set forth herein. However, if the Court were to permit leave to amend, any amended pleading for the same or similar conduct should be brought by Volvik Korea in a derivative capacity.

§607.0803(1) (Compl.¶17); and (3) after appointing Jang, Moon, without Notice to Shareholders, improvidently appointed his ***own replacement*** at the same time as his resignation. (Compl., Ex. D, E).

The factual premise underpinning the direct Counts asserted by Volvik USA in the Complaint is legally faulty. ***The Complaint alleges harm to Volvik USA as a result of the actions taken by Volvik USA that Volvik Korea disagreed with while Shin was President over a five month period***. For example, the below are just some of the allegations that can only support a derivative claim:

S. Shin…intended to seize control of Volvik USA's assets … and deplete them for her own personal benefit. (Compl. ¶22);

Because of S. Shin's mismanagement of Volvik USA, rather than growing its market share at a time of intense demand, Volvik USA faced a complete inability to supply legitimate product to distributors and retailers. (Compl. ¶39).

S. Shin has caused Volvik USA to lose discounts off of the sums otherwise owed and damage its relationship with its sole supplier of goods and effectively cut off Volvik USA's ability to function. (Compl. ¶108);

S. Shin has endangered the primary source of Volvik USA's revenue and resulted in in Volvik USA losing its ability to acquire inventory. (Compl. ¶109);

As a further result of S. Shin's actions leading Volvik USA's inability to acquire inventory, Volvik USA's sales and revenues significantly declined (notwithstanding booming sales in the industry at the time) (Compl. ¶110);

S. Shin's actions … cost Volvik USA in excess if 75,000.00 in net income/profit. (Compl. ¶111).

S. Shin cut off Volvik 's source of inventory, thereby preventing Volvik USA from continuing its present business and threatening total loss of future revenues once current inventory is exhausted. (Compl.¶ 120).

Significantly, during this time, Volvik USA had a director, Moon, but the Complaint is silent as to <u>any objection or opposition</u> by Moon with regard to Ms. Shin's purported

conduct as an officer of Volvik USA. Thus, the claims can only be derivative in nature and must be re-pled.

Derivative actions permit a shareholder to bring a lawsuit on behalf of a corporation.[4] To determine whether a claim is direct or derivative, the Court must look to state law and focus on the body of the complaint rather than the labels used by the parties." *Weir v. Stagg*, No. 09-21745-CIV, 2011 U.S. Dist. LEXIS 167113, at *22-23 (S.D. Fla. Feb. 7, 2011) (internal citations omitted). "[I]f the gravamen of the complaint is injury primarily to the corporation or the shareholders generally, then the cause of action belongs to the corporation, and the shareholders' right to pursue the action derives from the corporation." *Id.* (citations omitted). Here, given the dispute between two equal factions regarding management of the Company and the unlawful nature in which the Board seats were filled (and without shareholder vote under Florida law) the claims can only survive on behalf of the corporation derivatively.

**B.    Volvik USA Does Not State a Cause of Action for Accounting Against Ms. Shin and Mr. Choi (Count I)**

The claim for accounting must be dismissed because Volvik USA has not pled the required elements under Florida law. A party seeking an equitable accounting[5] must show that: (1) a fiduciary duty exists between the parties or the transaction at issue is complex; and (2) the remedy at law is inadequate. *Mortola v. Lakeside at Seven Oaks Homeowners*

---

[4] However, a derivative action requires additional pleading requirements under federal law that have not been met here. See Fed. R. Civ. P. 23.1; *see also Hamilton v. Blum*, No. 08-61336-CIV-ZLOCH/ROSENBAUM, 2009 U.S. Dist. LEXIS 138112, at *18-20 (S.D. Fla. Dec. 4, 2009).

[5] Defendants assume the claim is one for equitable accounting because no other legal basis has been pled to seek an accounting.

*Ass'n*, 2020 Fla. Cir. LEXIS 3883, *6-7 (citing *Zaki Kulaibee Establishment v. McFlicker*, 788 F. Supp. 2d 1363 (S.D. Fla. 2011) (other citations omitted).

Volvik USA's allegations are deficient. Oddly, this claim is asserted against two individuals who were terminated and removed from Volvik USA and who have admittedly been locked out of the Company. The allegations fail to assert that the Defendants even have access to such information. Rather, the allegations demonstrate such count is premature and should be dismissed. *See* Compl. ¶85 (Volvik USA "is uncertain if Volvik USA's records alone will provide sufficient detail to show the full extent of their actions"). Aside from the express statements establishing the claim is premature, the requisite elements against the Defendants cannot be met.

1.   The Element of Fiduciary Duty or Complex Transaction Is Not Met

First, as to Choi, Plaintiffs have not established he owed Volvik USA, as a matter of law, a fiduciary duty merely as an employee. (Compl. ¶¶78, 125, 126). As set forth below, the Complaint is devoid of allegations sufficient to satisfy the elements that Choi owed Volvik USA a fiduciary duty. Further, the allegations do not provide that the transactions at issue are complex. Rather, the Complaint alleges Volvik USA is "unsure as to whether it has information and records…". (Compl. ¶74). Volvik USA claims it is entitled to "information regarding expenses…". (Compl. ¶75). To survive a motion to dismiss, Florida law requires allegations involving "extensive or complicated accounts." *See Bankers Trust Realty v. Kluger,* 672 So. 2d 897, 898 (Fla. 3d DCA 1996).  As such, the claim against Choi is not a cause of action, but a discovery request. The claim should be dismissed against Choi for failure to plead the requisite first element.

As to Ms. Shin, because the Complaint alleges and is supported by Exhibit B which shows she held herself out as President of Volvik USA, based on the four corners of the Complaint, there is no dispute she owed Volvik USA certain duties enumerated under Florida law. However, Volvik USA cannot satisfy the second element of the claim to maintain an accounting claim against Ms. Shin.

2.      Volvik USA Has an Adequate Remedy at Law

Volvik USA has an adequate remedy at law against Choi and Shin. In the Complaint, Volvik USA is asserting damages claims against both Defendants for purported improprieties contained in Count I.[6] *Compare* Compl. ¶81 with ¶¶112, 115 (diverting assets); *Compare* Compl. ¶80 with ¶105, 107 (excessive salary). "The classic adequate remedy at law is money damages." *Bedoyan v. Samra*, No. 3D21-821, 2022 Fla. App. LEXIS 6600, at *8 n.5 (3d DCA Sep. 30, 2022).  Here, Volvik USA offers no facts to support the conclusory allegation that it does not have an adequate remedy at law. To the contrary, its claims against Defendants in Counts I, III, IV demonstrate otherwise. As such, the equitable accounting claim must be dismissed.

**C.      Volvik USA Has Not Adequately Pled a Breach of a Fiduciary Duty Claim Against Shin (Count III)**

The breach of fiduciary duty claim should be dismissed against Ms. Shin because it is insufficiently pled. A cause of action for a breach of fiduciary duty requires: "(1) existence of a fiduciary duty, (2) breach of that duty, and (3) damages flowing from the breach." *Columbia Bank v. Turbeville*, 143 So. 3d 964, 969-70 (Fla. 1st DCA 2014) (citing

---

[6] Although, as stated in Section V(A) above, Defendants' position is the claims should be brought as derivative claims.

*Cassedy v. Alland Invs. Corp.*, 128 So. 3d 976, 978 (Fla. 1st DCA 2014)); *see also* Fla. Std. J. Inst. (Civ.) 451.5.

First, as asserted above, it is a disguised derivative claim that has not been properly pled. Second, the claim is ambiguous as to the specific duties Ms. Shin owed or is claimed to have breached either as president or a purported director. Officers and directors have different duties and liability under Florida law. *See* Fla. Stat. §607.0801(duties of board of directors) §607.0830 (general standards for directors); §607.0831 (liability of directors); §607.0841 (duties of officers); §607.08411(general standards of officers). The Complaint, on its face, demonstrates Ms. Shin held herself out as President (Exhibit B), but there is no factual support that she acted as a director or satisfies the elements of a *de facto* director. Even if the Court finds the pleading requirement is met in that she acted as a director, the count is still subject to dismissal because it does not link unlawful conduct to her purported duties as either an officer or director. In other words, did she breach a duty as an officer or as director or both and how so in each role? The ambiguity in the pleading fails to provide proper notice of the claim for relief. (Compl. ¶¶120, 121).

Additionally, there is another glaring problem with this claim that requires dismissal. Absent from the Complaint is the conduct of the director, Moon, while Ms. Shin is alleged to have engaged in unlawful practices for nearly a 5 month period. As a director of Volvik USA, Moon was responsible for management of the corporation. Fla. Stat. §607.0801(2). There are no allegations that Moon did not approve, ratify or acquiesce to Ms. Shin's conduct as president (or director). As President, Ms. Shin had a duty to inform the board of directors of the corporation about the business' affairs. Fla. Stat.

§607.0841(3)(a). The Complaint is devoid of allegations that she did not do so; or that Moon objected or opposed the conduct she took ***for nearly 5 months*** before she was improperly and secretly removed. The allegations as they stand are insufficient to establish liability against Ms. Shin because critical facts are lacking regarding Moon's conduct to establish whether a claim can be maintained against Ms. Shin. Currently, the pleading is devoid of facts that would suggest Ms. Shin is liable for misconduct when Moon was responsible for Volvik USA's acts.

### D.   Volvik USA Fails to Allege Choi Owed It a Fiduciary Duty (Count IV)

Volvik USA does not establish Choi acted in a fiduciary capacity as a mere employee of the Company, requiring dismissal of Count IV.  Florida law provides that an employee owes an employer a duty of loyalty. *Brigham v. Brigham*, 11 So. 3d 374 (Fla. 3d DCA 2009). However, to establish a fiduciary relationship, 'a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.'" *Orlinsky v. Patraka*, 971 So. 2d 796, 800 (Fla. 3d DCA 2007) (citing *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993)). "Fiduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994) (citations omitted); *Orlinsky v. Patraka*, 971 So. 2d 796, 800 (Fla. 3d DCA 2007) (stating same). "Courts have found a fiduciary relationship implied in law 'when confidence is reposed by one party and a trust accepted by the other.'" *Id.* (citations omitted).

In the instant case, the Complaint alleges that Choi was an employee of Volvik USA but fails to provide facts that establish he owed the company fiduciary duties, i.e.,

state what, if any, trust and confidence was placed with him. (Compl. ¶¶78,125-126). The Complaint merely states in conclusory fashion that "[a]s an employee of Volvik USA, Choi owed Volvik USA a duty of loyalty, including fiduciary duties." (Compl. ¶126). Plaintiffs cannot pursue an ambiguous claim for breach of fiduciary duties against Choi.

## VI.   VOLVIK KOREA'S CLAIMS AGAINST DEFENDANTS MUST BE DISMISSED (Counts V, VI, VII, VIII)

### A.   The Trademark Counts (Counts V, VI and VII) Cannot Be Maintained for Failure to Allege Use in Commerce

Counts V-VII all require that a plaintiff plead the improper use of the plaintiff's trademark in commerce. The allegations fail to demonstrate the Defendants used the purported infringing mark "Tour (Vivid Pro)" in commerce and Counts V-VII must be dismissed.

### 1.   Count V Fails to State a Claim for Infringement Under 15 U.S.C. §1114

A trademark infringement claim under the Lanham Act based on a federally registered mark must allege, "that the mark was ***used in commerce*** by a defendant without the plaintiff's consent and that the defendant's use of the mark was likely to cause consumer confusion or to cause mistake or to deceive.'" *Freedom Mentor, LLC v. Saeger*, No. 6:18-cv-1235-Orl-40DCI, 2019 U.S. Dist. LEXIS 11217, at *11-12 (M.D. Fla. Jan. 24, 2019) (emphasis supplied) (citing *AWGI, LLC v. Team Smart Move, LLC*, No. 6:12-cv-948, 2012 U.S. Dist. LEXIS 137956, 2012 WL 12904223, at *2 (M.D. Fla. Sep. 26, 2012) (citing *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007))).

### 2.   Count VI Fails to State a Cognizable Action for False Designation of Origin

"To prevail on a claim for false designation of origin under Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants **_used in_** **_commerce_**, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' services by Plaintiff." *Listhrop v. Individuals*, No. 21-cv-20916, 2021 U.S. Dist. LEXIS 111628, at *12-13 (S.D. Fla. June 15, 2021)(citing *see* 15 U.S.C. § 1125(a)(1)) (emphasis supplied).

3. <u>Count VII is Insufficient to Maintain a Claim for Trademark Dilution</u>

To prevail on a dilution claim under federal or Florida law, a plaintiff must allege that: "(1) the plaintiff's mark is *famous*; (2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; (3) the defendant's **_use was commercial and in_** **_commerce_**; and (4) the defendant's use of the plaintiff's mark has likely caused dilution." *Ortavia D. Simon & Simon Law Grp., P.A. v. Nicholson Injury Law Pa & David Simon Nicholson*, No. 6:19-cv-1312-Orl-41DCI, 2020 U.S. Dist. LEXIS 258542, at *11-12 (M.D. Fla. June 17, 2020) (emphasis supplied) (internal quotations omitted) (citing *Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1312-13 (M.D. Fla. 2013); *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat. Univ., Inc.*, 91 F. Supp. 3d 1265, 1286 (S.D. Fla. 2015), aff'd, 830 F.3d 1242 (11th Cir. 2016)). In support of Counts V, VI and VII, Volvik Korea alleges:

- S. Shin "embarked on a **_plan_** to purchase golf balls…." (Compl. ¶53) (emphasis supplied);
- that S. Shin "**_planned_**" for Volvik to purchase 28,800 golf balls…" (Compl.¶56) (emphasis supplied);
- "It is the **_intent_** of S. Shin, Choi and Forward Motion that the Fake Volvik Gold Balls be transferred across state lines…" (Compl. ¶137);
- That "**_[i]f_** S. Shin were able to get the Fake Volvik Golf Balls onto retailers shelves, the damage **_could be_** catastrophic…." (Compl. ¶64) (emphasis supplied).

Volvik Korea does not allege and cannot allege Defendants used an infringing mark in "commerce." In fact, the Complaint establishes the opposite: 1) Volvik USA was authorized to order golf balls through a third-party vendor using the Volvik trademark pursuant to the Business Agreement (Compl., Ex A); and 2) that the money Volvik USA intended to pay Forward Motion for golf balls for Volvik USA to sell in the United States was returned to Volvik USA. (Compl. ¶¶69, 73).  Absent are allegations that any of the Defendants engaged in any unlawful conduct under the Lanham Act, much less received any purported infringing product.  There are no allegations that any Defendant or any consumer has access to the balls ordered by Volvik USA (which were not paid for), that said product is in the United States or has been distributed in the United States.

Counts V and VII are examples of unsupported conclusory statements that cannot withstand a motion to dismiss. Paragraph 135, which provides that Forward Motion is "***using and transacting and intends to sell or transact in commerce***" the infringing product, is not only conclusory but contrary to other allegations in the Complaint.

4.  Count VII Fails to Properly Plead the Volvik Trademark is Famous

The first element of a dilution claim is that plaintiff's mark is famous. "A mark is famous 'if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.'" 15 U.S.C. § 1125(c)(2)(A). Courts consider the following factors to determine if a mark is famous:

> (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*GLD, LLC v. Gold Presidents, LLC*, No. 20-21617-CIV-MORE, 2021 U.S. Dist. LEXIS 136498, at *10 (S.D. Fla. July 22, 2021). "Trademark dilution claims, are limited to 'truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls.'" *Id.* (citing *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1357 (S.D. Fla. 2012) (citing *Bd. of Regents, Univ. of Texas Sys. v. KST Elec.*, Ltd., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008))).

In *Brian Pharma*, the District Court for the Southern District of Florida held that a Complaint merely alleging extensive and continuous use, and that the mark was distinctive and strong in nature, were not plausible allegations sufficient to show the mark was "famous." *Brain Pharma, Ltd. Liab. Co. v. Scalini*, 858 F. Supp. 2d 1349, 1357-58 (S.D. Fla. 2012). The Court thereby dismissed the dilution claim stating that:

> Here, the Complaint alleges that "[a]s a result of the extensive and continuous use of the BPI Mark, including but not limited to use and association with BPI's line of products and the distinctive and strong nature of the BPI Mark, the BPI Mark became famous within the meaning of 15 U.S.C. § 1125(c)." Complaint ¶ 47. Other than such conclusory assertions, the Complaint fails to allege any facts which establish that the BPI Mark, in use only since January 28, 2009, is famous. *See* Complaint ¶ 10. Plaintiff's mere allegation that the BPI mark is famous is insufficient to state a trademark dilution claim. *See Hon*, 2012 U.S. Dist. LEXIS 57510, 2012 WL 1413681, at *9 ("DNA supplies only conclusions relating to the fame of the Original DAHON, BIOLOGIC, or ECOLOGIC marks. As to the relatively obscure Original BIOLOGIC and ECOLOGIC marks, DNA's assertion that these are famous marks is highly implausible. . . . **But whatever that level of fame is, it falls far short of the high standard required for a dilution claim. The Court greatly doubts that the general public of the United States is familiar with the Original DAHON mark**. Further, the fame of the Original DAHON mark cannot compare with that of a truly famous mark, such as Coca—Cola.").

*Id.* (emphasis supplied).

Here, Volvik Korea's dilution claim is unsuccessful because of its failure to allege facts that the Volvik Mark has achieved status as a famous mark.

**B. Volik Korea's Tortious Interference Claim Against Shin and Choi is Improper (Count VIII)**

Volvik Korea has not and cannot adequately plead a claim against Shin or Choi for tortious interference with Volvik Korea's relationship with Volvik USA because Shin has a financial interest in Volvik USA and Choi is alleged to have been in control of Volvik USA with Ms. Shin. (Compl. ¶¶18-19; ¶85).  The elements of the claim are: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc*., 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (internal quotations omitted). "'For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship.'" *Id.* (citing *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001).

A defendant is not considered a third party for the purpose of a tortious interference claim when they have a financial interest in the business relationship. *Bridge Fin., Inc. v. J. Fischer & Assocs.*, 310 So. 3d 45, 49 (Fla. 4th DCA 2020)("'[A] defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed'"); *Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.*, 810 So. 2d 996, 999 (Fla. 4th DCA 2002). ("'[A] cause of action for tortious interference does not exist against one who is himself a party to  the business relationship with which there has allegedly been interference'"); *Nimbus Tech., Inc. v. Sunndata Prods., Inc.*, 484 F.3d 1305, 1309 (11th Cir. 2007) ( "A defendant

is not a stranger to a business relationship if the defendant "has any beneficial or economic interest in, or control over, that relationship.

**VII.    VOLVIK USA AND VOLVIK KOREA FAIL TO ALLEGE A PROPER BASIS TO SEEK DECLARATORY RELIEF (COUNT II)**

The Complaint alleges that a declaratory action is necessary to find: (a) that S. Shin **_is not_** a director of Volvik USA; that (b) S. Shin **_is not_** a president or CEO of Volvik USA; and (c) that her ownership is something less than the 50% interest her husband maintained in Volvik USA. These requests are not the proper subject for a declaratory judgment. Instead, Plaintiffs are asking the Court to intervene and employ the Court's own judgment between shareholders in a closely held corporation for past acts on which Plaintiffs are asserting claims for damages. The circumstances in this Complaint simply do not support an appropriate claim for declaratory relief.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a)(emphasis supplied). "'Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment.'" *Crossen v. USAA Causalty Ins. Co.*, No. 9:18-CV-81453, 2019 U.S. Dist. LEXIS 44294, at *4-5 (S.D. Fla. Mar. 19, 2019) (quoting *Old Rep. Union. Ins. Co. v. Tillis Trucking Co., Inc.*, 124 F.3d 1258, 1260 (11th Cir. 1997)).

"To state a claim for declaratory judgment, a plaintiff must allege the existence of a real and substantial case or controversy that is 'definite and concrete, touching the legal relations of parties having adverse interests.'" *Saf. Vision, LLC v. Hillsborough Area Reg'l*

*Transit Auth*., No. 8:20-cv-2556-CEH-JSS, 2021 U.S. Dist. LEXIS 107056, at *6-7 (M.D. Fla. June 8, 2021)(citations omitted). "'Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id*. (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co*., 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941) (citation omitted)).

The purpose of declaratory relief is to settle actual controversies "before they ripen into violations of law or a breach of contractual duty." *Sierra Equity Group, Inc. v. White Oask Equity, LLC*, 650 F. Supp. 2d 1213, 1230 (S.D. Fla. 2009). Relief is not properly sought for past conduct or damages that have already occurred. *Id*. 1230-31 (citations omitted). Moreover, "'[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief.'" *Crossen*, No. 9:18-CV-81453, 2019 U.S. Dist. LEXIS 44294, at *4-5.(citations omitted).

Perhaps most important here, is that a "'declaratory judgment serves to clarify the legal relations and is not for the purpose of making factual determinations.'" *First Mercury Ins. Co. v. First Fla. Bldg. Corp*., No. 8:20-cv-01929-CEH-AAS, 2021 U.S. Dist. LEXIS 174111, at *6 (M.D. Fla. Sep. 14, 2021) (citing and quoting *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) (other citaitons omitted); *Linder v. Northwestern Mut. Life. Ins. Co*., 2021 U.S. Dist LEXIS 2294 * 20 (S.D. Fla. 2021) (determining whether a plaintiff is totally disabled is a fact based inquiry not appropriate for declaratory judgment) (quotations omitted). In *United States Aviation*

*Underwriters, Inc. v. W.M. Aviation, LLC,* this District differentiated factual disputes from legal obligations when it granted a motion to dismiss a claim for declaratory relief:

> USAU does not claim to be in doubt about its own rights or obligations, and the matter appears to have reached a stage where USAU can seek a coercive remedy in a contract action. It is clear that there are many disputed issues of fact, and resolution of those issues will likely depend on credibility determinations of fact witnesses and not on legal interpretations. Disputed facts do not necessarily preclude the issuance of declaratory relief, but here the essence of the case is a factual dispute as to the existence of a binding agreement; the determinative question is factual rather than legal.
>
> Under these circumstances, the issuance of a declaratory judgment would not serve its intended purpose. Thus, the Court concludes that entertainment of this suit as an action under the Declaratory Judgment Act is not appropriate.

*United States Aviation Underwriters, Inc. v. W.M. Aviation, LLC*, No. 6:09-cv-1184-Orl-28KRS, 2009 U.S. Dist. LEXIS 118717, at *5-6 (M.D. Fla. Dec. 21, 2009).

Is it evident from Count II that declaratory relief is improper and the Court should use its discretion and dismiss the claim. First, Plaintiffs hypothesize that there is a continuing dispute regarding Ms. Shin's status as an officer and/or director, but the Complaint and exhibits establish Plaintiffs believe they have properly removed her and that she should be liable for damages for her actions. (Compl. ¶¶46, 49).  Moreover, the "controversy" is based upon mere "information and belief" allegations.

Next, Plaintiffs are requesting the Court make a determination that Ms. Shin owns less than 50% of the shares in Volvik USA without any basis under Florida law or a contract that governs the corporation. How exactly is the Court to decide whether one shareholder should lose equity interest in a closely held corporation and what that interest should be? These questions are not legal interpretations but rather, pure factual disputes.

In sum, the declaratory relief would require the Court to determine who the officers and directors of the company should be and how much interest each shareholder owns.

Last, Plaintiffs have each raised claims for damages for alleged past conduct on which they have asserted other claims in this lawsuit. This Court should decline to exercise declaratory relief where claims exist seeking damages for the same conduct. "'[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief.'" *Crossen v. USAA Casualty Ins. Co.*, No. 9:18-CV-81453, 2019 U.S. Dist. LEXIS 44294, at *5 (S.D. Fla. Mar. 19, 2019) (citing and quoting *Fernando Grinberg Trust Success Int. Props. LLC v. Scottsdale Ins. Co.*, Case No. 10-20448-CIV, 2010 U.S. Dist. LEXIS 69229, 2010 WL 2510662 at *1 (S.D. Fla. June 21, 2010)) (other citations omitted).

## VIII.   INJUNCTIVE RELIEF AGAINST MS. SHIN IS NOT WARRANTED

On pages 29-30, Plaintiffs interpose a generic request for injunctive relief against Ms. Shin. Plaintiffs have not asserted a legal or factual basis for such broad injunctive relief. To seek a permanent injunction, Plaintiffs must allege (1) success on the merits, (2) continuing irreparable injury and (3) no adequate remedy at law. *Keener v. Convergys Corp.,* 342 F. 3d 1264, 1269 (11th Cir. 2003). They do not allege a legal claim or statute entitling them to injunctive relief. The relief is also duplicative of other claims and addresses past conduct of Ms. Shin. The request for such relief is yet another overt act by Volvik Korea to steal and appropriate Ms. Shin's interest in Volvik USA and deny her access to the business her husband created and developed.

WHEREFORE, Defendants request that this Court dismiss the Complaint for the reasons stated above, and for any further relief this Court may deem just and proper.

LEWIS BRISBOIS BISGAARD & SMITH LLP
110 SE 6th Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone: 954.728.1280
Facsimile: 954.728.1282

By: *s/Stacy M. Schwartz*
Kenneth J. Joyce, Esq. (FBN 986488)
ken.joyce@lewisbrisbois.com
linda.yun@lewisbrisbois.com
ftlemaildesig@lewisbrisbois.com
Stacy M. Schwartz, Esq. (FBN 520411)
stacy.schwartz@lewisbrisbois.com
gary.lipscomb@lewisbrisbois.com
niki.swain@lewisbrisbois.com
David M. Robbins (FBN 1012340)
david.robbins@lewisbrisbois.com
avia.pasternak@lewisbrisbois.com

*Counsel for Soo Yon Jeon Shin, James Eunsuk Choi, and Forward Motion Corporation*

## LOCAL RULE 3.01(G) CERTIFICATION

Movant's counsel conferred with counsel for both Plaintiffs on October 18, 2022 via telephone. The parties were unable to agree on a resolution of all or part of the Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*s/ Stacy M. Schwartz*
Stacy M. Schwartz