# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| VOLVIK USA INC., a Florida corporation, and VOLVIK INC., a Korean corporation<br><br>    Plaintiffs/Counter-Defendants,<br><br>v.<br><br>SOO YON JEON SHIN, an individual, JAMES EUNSUK CHOI, an individual, and FORWARD MOTION CORPORATION, a California Corporation,<br><br>    Defendants/Counter-Plaintiffs,<br><br>v.<br><br>KYUNG AHN MOON, an individual, KIDONG JANG, an individual, SEUNG SEOK HONG, an individual, and NAMHYUN KIM, an individual,<br><br>    Counterclaim Defendants. | C.A. No. 22-CV-01405-WWB-DAB |

## VOLVIK INC.'S MOTION TO DISMISS COUNTERCLAIMS AND INCORPORATED MEMORANDUM OF LAW

VOLVIK INC. ("Volvik Korea"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the VERIFIED COUNTERCLAIM FOR DERIVATIVE RELIEF PURSUANT to FLA. STAT. § 607.0742 AND COUNTERCLAIM FOR DIRECT RELIEF, D.E. 28 (the "Counterclaim") filed by SOO YON JEON SHIN ("Shin"), JAMES EUNSUK CHOI ("Choi"), and FORWARD MOTION CORPORATION ("Forward Motion") (collectively, "Counter-Plaintiffs") for failure to state a claim upon which relief may be granted.

1

**Background**

Volvik Korea has manufactured, distributed, and sold golf balls and other golf equipment worldwide since the 1980s and is a well-known and distinct brand to golfers around the globe. In 2012, Volvik Korea established Volvik USA Inc. ("Volvik USA") with the assistance of Dong Hwan Shin. Volvik USA served as a distributor of Volvik products pursuant to a Business Agreement between Volvik Korea and Volvik USA. Dong Shin passed away in February 2022, at which time Defendant Shin, his widow, seized control of Volvik USA. During her brief but chaotic tenure as president and purported director of Volvik USA, Shin, aided by Choi, caused Volvik USA to cease making payments for goods received under the Business Agreement and sought to redirect Volvik USA's funds to themselves. In addition to directly looting Volvik USA's coffers, Shin and Choi caused Volvik USA to enter a contract with Forward Motion to purchase fake, dubious-quality golf balls and related materials bearing Volvik trademarks. As the only owners and directors of Forward Motion, Shin and Choi would have enjoyed the financial benefit of this sham transaction and the sale of these unlicensed goods to Volvik USA.

Volvik Korea, holder of at least 50% of the shares of Volvik USA, took a series of corporate actions to remove Shin from her roles and reestablish control of Volvik USA. Volvik Korea and Volvik USA also had to take immediate action in freezing several wires of funds out of Volvik USA's bank account to Forward Motion, a company owned by Shin and Choi, and a company owned by Choi (the "Fraudulent Wires," as described in the Amended Complaint, D.E. 25).

On August 8, 2022, Volvik Korea and Volvik USA brought this action against Shin, Choi, and Forward Motion and subsequently filed an Amended Complaint, D.E. 25, on

September 30, 2022. On October 21, 2022, Defendants/Counter-Plaintiffs filed the Counterclaim. The Counterclaim lays out a mirror world where Shin has been wrongfully deposed from her throne, and she along with Choi and Forward Motion have somehow been harmed by the righting of the Volvik USA ship. This narrative culminates in a smattering of claims which, as set out below, are inadequate as a matter of law and should be dismissed.

**Memorandum of Law**

A pleading must contain a short and plain statement showing entitlement to relief. Fed. R. Civ. P. 8(a)(2). The allegations must raise the right to relief above a speculative level, and a plaintiff must provide more than threadbare recitals of the elements of a cause of action and conclusory statements. *Broaddus v. AAA Mid-Atlantic Inc.*, No. 6:13-cv-1647-Orl-22, 2014 U.S. Dist. LEXIS 69120, at *6-7 (M.D. Fla. May 1, 2014) (Baker, Mag.), *adopted Broaddus v. AAA Mid-Atlantic Inc.*, No. 6:13-cv-1647-Orl-22DAB, 2014 U.S. Dist. LEXIS 69119 (M.D. Fla. May 20, 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)).

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations of the complaint. *Id.* However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Stewart v. Sterling Tech. Sols., LLC*, No. 6:10-cv-630-Orl-28DAB, 2011 U.S. Dist. LEXIS 101007, at *3, 2011 WL 3962130 (M.D. Fla. Aug. 9, 2011) (Baker, Mag.) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Dismissal is also appropriate where even assuming the truth of the allegations, relief is precluded as a matter of law. *Id.*

I.      **Count I – Breach of the Business Agreement**

Shin purports to sue derivatively on behalf of Volvik USA for alleged breach of the Business Agreement by Volvik Korea. This claim must be dismissed because any such claim may only be brought in arbitration.

"Under the FAA, courts must rigorously enforce arbitration agreements according to their terms." *Seminole Cty. Tax Collector v. Domo, Inc.*, No. 6:18-cv-1933-Orl-40DCI, 2019 U.S. Dist. LEXIS 68747, at *14-15, 2019 WL 1901019 (M.D. Fla. Feb. 13, 2019), *adopted Seminole Cty. Tax Collector v. Domo, Inc.*, No. 6:18-cv-1933-Orl-40DCI, 2019 U.S. Dist. LEXIS 68276, 2019 WL 1772108 (M.D. Fla. Apr. 23, 2019) (citing *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)) (quotations omitted).

To establish a waiver of a right to arbitrate, the party asserting waiver must establish that the other party acted inconsistently with the arbitration right. *Grant v. JP Morgan Chase & Co.*, No. 8:19-cv-1808-T-02SPF, 2019 U.S. Dist. LEXIS 179098, at *7 (M.D. Fla. Oct. 16, 2019) (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)). This may occur when a party invokes the litigation process prior to demanding arbitration on a claim. *Id.* The party asserting waiver must then establish that it was prejudiced by the delay in demanding arbitration. *Id.*

"Because federal policy strongly favors arbitration, the party who argues waiver bears a heavy burden of proof under this two-part test." *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 n.17 (11th Cir. 2011). As this Court has noted, '[a]ll questions concerning scope or waiver of the right to arbitrate under contracts should be resolved in favor of arbitration rather than against it." *Senti v. Sanger Works Factory, Inc.*, No. 6:06-cv-1903-Orl-22DAB, 2007 U.S. Dist. LEXIS 100670, at *12 (M.D. Fla. Mar. 30, 2007)

(Baker, Mag.), *adopted Senti v. Sanger Works Factory, Inc.*, No. 6:06-cv-1903-Orl-22DAB, 2007 U.S. Dist. LEXIS 28653, 2007 WL 1174076 (M.D. Fla. Apr. 18, 2007).

Counter-Plaintiffs admit the Business Agreement contains an arbitration clause. D.E. 28 at ¶ 84. They do not assert that this clause is invalid, but only claim that Volvik Korea has waived its right to arbitrate by filing this action, which Counter-Plaintiffs contend relates to the Business Agreement. This is a misstatement of Volvik Korea's claims. Nowhere in the Amended Complaint does Volvik Korea assert a claim for breach of the Business Agreement against Volvik USA. Volvik Korea only asserts claims for Shin and Choi's tortious interference with the Business Agreement. Tortious interference by a non-party is not within the scope of the arbitration clause and thus Volvik Korea has not invoked the litigation process with respect to an arbitrable dispute. Volvik Korea is demanding arbitration in a separate Motion to Compel Arbitration filed concurrently herewith. Therefore, there has been no delay in asserting the right. The Counterclaim is also entirely devoid of allegations of prejudice. Therefore, Counter-Plaintiffs have failed to establish waiver of the right to arbitrate. Because Count I is subject to arbitration, it must be dismissed.

## II.   Count VI – Appointment of Custodian or Provisional Director

Shin seeks appointment of a custodian or provisional director to manage Volvik USA's affairs. A court may appoint a custodian or receiver for a corporation in a proceeding by a shareholder where management is deadlocked, the shareholders cannot resolve the deadlock, and irreparable injury to the corporation is threatened or being suffered, or where those in control of the corporation are acting fraudulently and irreparable injury to the corporation is threatened or being suffered. Fla. Stat. § 607.0748.

Courts should not recognize deadlocks as justification to appoint a custodian where one side "sought to manufacture it by refusing to consider any issue" or if the deadlock is based on a "specious premise." *Kleinberg v. Aharon*, No. 12719-VCL, 2017 Del. Ch. LEXIS 24, at *33, 2017 WL 568342 (Del. Ch. Feb. 13, 2017).[1]

A custodian or receiver may be appointed to "manage and operate [a] business when actual fraud, or mismanagement amounting to fraud upon the rights of a minority stockholder or creditor which may reasonably portend imminent danger of loss of corporate assets and seriously threaten corporate existence, is clearly established." *McAllister Hotel, Inc. v. Schatzberg*, 40 So. 2d 201, 203 (Fla. 1949).

"The appointment of a receiver . . . should be approached with caution and circumspection." *DeSilva v. First Cmty. Bank of Am.*, 42 So. 3d 285, 288 (Fla. 2d DCA 2010) (citing *Edenfield v. Crisp*, 186 So. 2d 545, 548 (Fla. 2d DCA 1966)).

> "In various cases our courts have pointed out the reluctance with which such drastic relief is granted, and the broad rule emerges that a receiver should not be appointed unless, after a careful examination of all the facts in the case, the exigencies of the case demand it and no other protection to the applicants can be devised by the court. In other words, the appointment of receiver for a going corporation is a last-resort remedy, and should not be employed when another adequate remedy is available."

*Recarey v. Rader*, 320 So. 2d 28, 30 (Fla. 3d DCA 1975) (citing cases). In *Recarey*, minority stockholders of a hospital sought appointment of a receiver to "take control of all of the books and records of the [h]ospital, to conserve its assets, and to continue the management of the operation of the [h]ospital," in response to alleged mismanagement

---

[1] Decisions of the Delaware Court of Chancery are persuasive authority in interpreting Florida's corporate law. *See, e.g., Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1459 n.22 (11th Cir. 1989) ("We rely with confidence upon Delaware law to construe Florida corporate law. The Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines.") (citing cases).

and diversion of funds. *Id.* at 29. The appellate court granted a writ of mandamus reversing the appointment of the receiver because the court could have granted appropriate and effective relief without taking the drastic step of appointing a receiver. *Id.* at 30.

Appointment of a receiver was similarly improper where "the receiver was appointed not to protect the assets of the limited partnership and the rights of all of the parties, but rather to preserve a fund from which" the plaintiff could recover from the business. *Sharon Gardens Assocs., Ltd. P'ship v. Florescue*, 629 So. 2d 1002, 1003 (Fla. 4th DCA 1993). In *Sharon Gardens*, a limited partner sued the limited partnership and its general partner for failing to repay certain loans and make distributions to the plaintiff. *Id.* In reversing the trial court's appointment of a receiver, the appellate court found "[t]here was no evidence that the assets of the limited partnership are in danger of being dissipated. Rather, only [plaintiff's] distributions are in danger of being improperly converted by [defendant] to his own use." *Id.* The court also found appointment of a receiver inappropriate because the plaintiff had an adequate remedy at law. *Id.*

It is an abuse of discretion to appoint a custodian or receiver in the absence of the requesting party's proof of a clear legal right to the property in controversy and that such property is subject to a serious loss. *Gonzalez Plaza v. Gonzalez Plaza*, 78 So. 3d 4, 6 (Fla. 3d DCA 2011) (reversing appointment of receiver where record only asserted alleged past loss of monetary assets); *Alafaya Square Ass'n v. Great W. Bank*, 700 So. 2d 38, 40 (Fla. 5th DCA 1997) (reversing appointment of receiver where there was no waste or impairment of value to property); *Barnett Bank, N.A. v. Steinberg*, 632 So. 2d 233, 234 (Fla. 1st DCA 1994) (holding trial court properly refused to appoint a receiver

based on one party's desire to prevent the other party's continued management of certain assets).

Shin has failed to establish the required elements for appointment of a custodian, receiver, or provisional director. Initially, Shin's arguments that a deadlock exists are unavailing. There is no deadlock among the current directors of Volvik USA. Shin claims the deadlock exists among the shareholders as to the number and identity of directors of Volvik USA. D.E. 28 at ¶¶ 74, 116-18. Despite Shin's assertions, the appointment of new directors complied with Florida law and thus these directors are not acting fraudulently. *See* D.E. 25 at ¶ 45. Shin's vote to remove lawfully appointed directors at the special shareholders meeting is a blatant attempt to manufacture deadlock and this Court should not entertain it. Thus, neither of the situations contemplated by § 607.0748 exists and Count VI should be dismissed.

Irreparable harm, or at least the threat thereof, is necessary for appointment of a custodian, receiver, or provisional director under § 607.0748 and § 607.0749. As courts have noted, taking over corporate affairs and handing them to a custodian is a drastic remedy not to be employed lightly. Shin claims that current management has caused Volvik USA to breach business obligations and drained its bank accounts by sending funds to Volvik Korea. D.E. 28 at ¶ 117. The only business "obligation" allegedly breached is a sham contract with Forward Motion designed to enrich Shin and Choi at the expense of Volvik USA, as detailed in the Amended Complaint. *See* D.E. 25 at ¶¶ ¶¶ 52-64, 69-74, 166, 170. Furthermore, what Shin claims was the draining of Volvik USA's bank accounts was merely the payment of Volvik USA's past due debt to Volvik Korea for products already shipped to Volvik USA. D.E. 28 at ¶¶ 22, 42, 45, 78; D.E. 25 at ¶¶ 14,

32-37. At best, Shin has asserted that current management has honored its contracts with its primary supplier of golf balls and has prevented her from enriching herself on Volvik USA's funds. This does even remotely approach the threat of irreparable harm required for the appointment of a custodian or provisional director.  In fact, it underscores the threat to the continued existence of Volvik USA that Shin posed when she was exercising control.

Shin does not seek to preserve Volvik USA's assets, but rather to preserve a pool of company money which she has become accustomed to dipping into at will, as in *Sharon Gardens*. Similarly, though Shin is displeased that Volvik USA is under new management, the court in *Barnett Bank* explained that a desire to prevent another party from managing assets is not sufficient to justify appointment of a custodian. Finally, even if Shin's interests had been impaired, she has a remedy at law in the form of damages (as she seeks in other counts) and thus appointment of a custodian is improper. For all these reasons, Count VI must be dismissed.[2]

### III.   Count VII – Breach of Covenant of Good Faith and Fair Dealing

Shin seeks damages against Volvik Korea for alleged breaches of the implied covenant of good faith and fair dealing. "Under Florida law, every contract contains an implied covenant of good faith and fair dealing which protects 'the reasonable expectations of the contracting parties in light of their express agreement.'" *Merch. One, Inc. v. TLO, Inc.*, No. 19-cv-23719, 2020 U.S. Dist. LEXIS 7462, at *15, 2020 WL 248608

---

[2] Shin has moved separately for appointment of a custodian or provisional director. D.E. 37. For additional discussion on this point and why such request for relief should be denied as a matter of law, Volvik Korea directs the Court to its response to Shin's motion filed concurrently herewith.

(S.D. Fla. Jan. 16, 2020) (quoting *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012)).

However, "a claim for breach of implied duty of good faith and fair dealing may not be sustained absent a showing that an express term of a contract was breached." *Temp. Servs. Ins. v. O'Donnell*, No. 6:07-cv-1507-Orl-35GJK, 2010 U.S. Dist. LEXIS 160294, at *41-42 (M.D. Fla. Mar. 26, 2010) (citation omitted); *accord Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. 2d DCA 2005) ("There can be no cause of action for a breach of the implied covenant 'absent an allegation that an express term of the contract has been breached.'") (citing cases); *see also White v. Fort Myers Beach Fire Control Dist.*, 302 So. 3d 1064, 1072 (Fla. 2d DCA 2020).

Under Florida law, the express term which forms the basis for invoking the implied covenant must afford the performing party discretion in performance. *See Three Keys, Ltd. v. Kennedy Funding*, Inc., 28 So. 3d 894, 903 (Fla. 5th DCA 2009); *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999).

Moreover, the Eleventh Circuit has previously held that a party may not bring an independent cause of action for breach of the implied covenant. *Centurion Air Cargo v. UPS Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317 (11th Cir. 1999). This flows from the fact that the implied covenant is not its own term but is merely attached to the express terms of the contract. *See Centurion*, 420 F.3d, at 1151-52; *Three Keys*, 28 So. 3d, at 903.

Ultimately, a party "cannot use the implied duty of good faith to create a duty which does not otherwise exist." *Progressive Am. Ins. Co. v. Rural/Metro Corp.*, 994 So. 2d 1202, 1207-08 (Fla. 5th DCA 2008); *see also Taubenfeld v. Lasko*, 324 So. 3d 529, 538

(Fla. 4th DCA 2021) ("Lawyers tend to sling the term 'good faith' into a pleading as if it creates contractual or other duties that form the basis of a lawsuit.").

Shin's claim fails as a matter of law because the Eleventh Circuit does not recognize a stand-alone cause of action for breach of the implied covenant. Beyond this fundamental shortcoming, Shin's claim suffers from additional failings. Shin does not plead an express contract between Volvik Korea and herself, nor does she identify any contractual term affording Volvik Korea substantial discretion in carrying out the (non-existent) contract. Both parties agree that Volvik USA does not have a shareholder's agreement or similar contract between its owners. D.E. 28 at ¶ 16; D.E. 25 at ¶ 17. It is impossible for Shin to point to an express contract which has been breached and therefore Shin cannot invoke the implied covenant as a matter of law. Shin seeks to use the implied covenant to create a duty of Volvik Korea not to question the parties' relative ownership of Volvik USA based on past capital contributions, a duty which does not otherwise exist.[3] This is improper under Florida law and therefore Count VII must be dismissed.

## IV.    Count VIII – Breach of Fiduciary Duty & Count IX – Breach of Duty of Loyalty

Shin seeks damages against Volvik Korea for breaches of fiduciary duties allegedly owed to her as a co-shareholder in Volvik USA. As a preliminary matter, Count VIII seeks damages for breach of undefined "fiduciary duties" while Count IX seeks damages for breach of the duties of "loyalty and care." D.E. 28 at ¶¶ 126, 132. Both counts

---

[3] To the extent Shin asserts some inherent duties between shareholders, these are properly addressed by her claims for breach of fiduciary duty and subject to dismissal as set forth *infra*. See *Taubenfeld*, 324 So. 3d, at 538 (finding duty of good faith is subsumed within the duty of loyalty in corporate context).

allege these duties arise from Shin and Volvik Korea's ownership of Volvik USA, which Shin claims is 50-50. D.E. 28 at ¶¶ 125-26, 132. The remaining allegations of each count are almost identical. It is not clear what other fiduciary duties besides the well-recognized corporate concepts of loyalty and care form the basis of Count VIII; thus these counts are duplicative and fall together.[4]

"Claims involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation." *Gault v. SRI Surgical Express, Inc.*, No. 8:12-cv-1389-T-33TGW, 2012 U.S. Dist. LEXIS 151409, at *5, 2012 WL 5199581 (M.D. Fla. Oct. 22, 2012). The elements of a claim for breach of fiduciary duty are the existence of a fiduciary duty and the breach of that duty such that it is the proximate cause of the plaintiff's damages. *Id.* (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)).

Directors and officers of corporations owe fiduciary duties to the corporation and its shareholders. *E.g.*, *Taubenfeld*, 324 So. 3d, at 537-38. However, the existence and scope of fiduciary duties of *shareholders* with respect to each other is less established under Florida law. There is no general fiduciary duty between business associates. *Orlinsky v. Patraka*, 971 So. 2d 796, 800 (Fla. 3d DCA 2007).

In some cases, courts have held that a majority shareholder owes fiduciary duties to minority shareholders. *Orlinsky*, 971 So. 2d, at 801 (shareholder holding 69% of

---

[4] To the extent that Count VIII implicates duties other than the corporate duties of loyalty and care, it fails to sufficiently allege the existence and nature of these fiduciary duties. "To establish a general fiduciary relationship, 'a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.'" *Orlinsky v. Patraka*, 971 So. 2d 796, 800 (Fla. 3d DCA 2007). The Counterclaim is entirely devoid of any such allegations and thus fails to state a claim.

outstanding stock owed fiduciary duties to minority owners); *Kremer v. Lysich*, No. 3:19-cv-887-BJD-JBT, 2022 U.S. Dist. LEXIS 29856, at *5 (M.D. Fla. Feb. 17, 2022) (shareholder holding 80% of outstanding stock owed fiduciary duties to minority owners); *Reiter v. Branch*, No. 5:05-cv-46-Oc-10GRJ, 2005 U.S. Dist. LEXIS 61751, at *14 (M.D. Fla. Nov. 9, 2005) (holders of aggregate 66.5% of outstanding stock owed fiduciary duties to minority owners when acting in concert); *compare Carney v. IDI-DX, Inc.*, No. 2:12-cv-00449-FtM-29DNF, 2013 U.S. Dist. LEXIS 114051, at *7, 2013 WL 4080326 (M.D. Fla. Aug. 13, 2013) (granting motion to dismiss where complaint failed to allege defendant was a majority shareholder); *Starks v. Chuhak & Tecson, P.C.*, No. 17-62366-CIV-COHN/SELTZER, 2019 U.S. Dist. LEXIS 10043, at *5, 2019 WL 10060337 (S.D. Fla. Jan. 18, 2019) (dismissing complaint where plaintiffs only offered conclusory allegations fiduciary duties existed).

The duty of majority shareholders has been characterized as a duty "to not utilize their control of the corporation to their advantage as against the minority stockholders." *Tills v. United Parts*, 395 So. 2d 618, 619 (Fla. 5th DCA 1981). Fiduciary duties are not implicated in the termination of a shareholder's employment with the company or removal of a shareholder from a management position. *Orlinsky*, 971 So. 2d, at 802-03.

Shin bases the existence of Volvik Korea's alleged fiduciary duties to her on Volvik Korea's co-ownership of Volvik USA. D.E. 28 at ¶¶ 126, 132. Mere co-ownership does not give rise to a fiduciary duty on the part of Volvik Korea. Nor can Shin rely on cases involving majority stockholders, as this is directly contradicted by her allegations that the parties own Volvik USA 50-50. D.E. 28 at ¶¶ 15, 22, 29, 40, 60, 125-26, 132. Shin fails to

offer more than the legal conclusion that Volvik Korea owes her fiduciary duties, which this Court is not bound to accept. Therefore, Counts VIII and IX must be dismissed.

Shin also fails to sufficiently allege that Volvik Korea has used Volvik USA to its advantage against her. There has been no refusal to share revenues and profits—payments from Volvik USA to Volvik Korea were for goods already received and owed pursuant to the Business Agreement. D.E. 28 at ¶¶ 22, 42, 45, 78; D.E. 25 at ¶¶ 14, 32-37. In addition to being a lawful basis for payment to Volvik Korea, the fact that suppliers must be paid for the products they provide is a financial reality that must be satisfied prior to the generation of any profit which might be distributable to the shareholders. That Shin sought to suspend this economic reality and avoid paying Volvik Korea for the products it provided does not make Volvik USA's decision to start paying its debt actionable. Shin does not allege that Volvik Korea has received a dividend or payment in the capacity of a shareholder that she has not received. Though Shin complains of being removed from her managerial roles, this does not at all implicate fiduciary duties. The remaining alleged breaches similarly fail to rise to the level of abuse which would violate a fiduciary duty. Therefore, even assuming Volvik Korea owes a fiduciary duty, Shin fails to sufficiently plead a breach or damages and Counts VIII and IX must be dismissed.

## V.      Count X – Unjust Enrichment

Shin seeks damages for alleged unjust enrichment of Volvik Korea. "Under Florida law, unjust enrichment claims require that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knows of the benefit and voluntarily accepts and retains it; and (3) the circumstances are such that it would be inequitable for the defendant to retain

the benefit." *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1359 (M.D. Fla. 2021) (citation omitted).

An unjust enrichment claim cannot succeed if an express contract exists concerning the same subject matter. *Id.* at 1359. "Where a plaintiff predicates their unjust enrichment claim on wrongful conduct of a defendant, then the plaintiff's right of recovery, if any, arises from the wrong of the alleged tort rather than unjust enrichment." *Electrostim Med. Servs. v. Lindsey*, No. 8:11-cv-2467-T-33TBM, 2012 U.S. Dist. LEXIS 61235, at *9, 2012 WL 1560647 (M.D. Fla. May 2, 2012); *see also Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n.2 (11th Cir. 2003) ("[t]he law of unjust enrichment is concerned solely with enrichments that are unjust independently of wrongs and contracts.").

As to Shin's claim that Volvik Korea was unjustly enriched by "receipt of all of Volvik USA's revenue and profit," this claim fails because the transfer of funds from Volvik USA to Volvik Korea is subject to an express contract. The Business Agreement governed Volvik USA's payments to Volvik Korea, and the sums transferred were for goods already provided to Volvik USA for which payment had been demanded. D.E. 28 at ¶¶ 22, 42, 45, 78; D.E. 25 at ¶¶ 14, 32-37. Therefore, any claim of unjust enrichment based on these transfers is barred as a matter of law. Further, because this transfer is a dispute arising from the Business Agreement, it falls within the scope of the arbitration clause and may only be resolved in arbitration as discussed *supra*. For this additional reason, Count X must be dismissed.

As to the remaining alleged methods of enrichment, Shin fails to plead how these activities conferred a benefit to Volvik Korea. Shin merely concludes that Volvik Korea was enriched by denying Shin access to Volvik USA's records, controlling Volvik USA's

conduct, and removing Shin from her managerial roles. This Court is not required to accept these legal conclusions.

More importantly, claims based on these alleged enrichments are barred as a matter of law because they relate to other allegedly wrongful conduct by Volvik Korea. The Counterclaim repeatedly refers to Volvik Korea's actions as "wrongful" and "malicious." D.E. 28 at ¶¶ 60, 138. The conduct complained of is the same conduct forming the basis of Shin's other claims, and her right of recovery, if any, arises from these other alleged torts rather than unjust enrichment.[5] Therefore, her unjust enrichment claim is barred as a matter of law and must be dismissed.

## VI.    Count XII – Fraudulent Transfer

Forward Motion seeks damages, avoidance of transfer, and injunctive relief against Volvik Korea for alleged fraudulent transfers pursuant to the Florida Uniform Fraudulent Transfer Act ("FUFTA"), Fla. Stat. § 726.101 *et seq.*

The FUFTA provides creditors various forms of relief to avoid a debtor's transfer of assets made with actual intent to hinder, delay, or defraud the creditor. *Wells Fargo Bank, N.A. v. Barber*, 85 F. Supp. 3d 1308, 1316-17 (M.D. Fla. 2015). The statute provides certain "badges" of fraud for courts to consider, and the court may consider any other factor it deems relevant—it is the totality of the circumstances which determines whether a transfer is fraudulent. *Id.*; *see also* Fla. Stat. § 726.105(2)(a)-(k).

---

[5] Though Shin has not sued for wrongful termination, her right to recover for "removal of Ms. Shin as President of the company" would be properly brought as such a tort action and thus be barred. As to the claim that Volvik Korea is conspiring to "wipe out Ms. Shin's interest in Volvik USA," Shin alleges no actual transfer of shares or ownership interest to Volvik Korea. This failure to allege that a benefit was conferred causes this claim to fail.

Volvik Korea first disputes whether Forward Motion is a "creditor" within the scope of the FUFTA. The contract between Forward Motion and Volvik USA provides that payment is due three days "after the contract is completed." D.E. 28-6, Art. 6. Forward Motion has taken the position on record that it has not delivered goods to Volvik USA. D.E. 27 at pp. 16-18. Thus, by Forward Motion's admission the contract has not been completed and it has no claim for payment thereunder. Absent a claim, Forward Motion cannot be a creditor for purposes of the FUFTA and Count XII fails as a matter of law.[6]

Though Forward Motion asserts several badges of fraud are present in this case, its allegations are either unpersuasive, contrary to the statutory factors, contradicted by the allegations of the Counterclaim, or outright false.

Forward Motion contends that Volvik Korea is an insider of Volvik USA due to its status as a shareholder. However, this factor carries little weight as Volvik Korea is also a contractual counterparty under the Business Agreement, and neither party disputes this. *E.g.*, D.E. 28 at ¶¶ 22, 78. The transfer was made pursuant to the Business Agreement and is best viewed a transfer to another creditor of Volvik USA rather than an insider. Thus, this factor does not favor a finding of fraud.

Where the debtor retains the assets, this may indicate fraud. *E.g.*, *Barber*, 85 F. Supp. 3d, at 1318. The allegation that "Volvik Korea removed the assets from the [*sic*] Volvik USA" thus weighs against inferring fraud. The size of the transfer from Volvik USA to Volvik Korea was simply by virtue of Shin's refusal to permit Volvik USA to pay for goods shipped by Volvik Korea over a period of many months. The fact that Volvik USA

---

[6] Volvik Korea also disputes the validity of Forward Motion's claim because the purported transaction was a sham intended to funnel money from Volvik USA to Shin and Choi, the two directors of Forward Motion, as detailed in the Amended Complaint.

had incurred a large bill under the Business Agreement does not indicate fraud. There is no factual support for the allegation that the transfer was concealed, as Counter-Plaintiffs state that they discovered the transfer "just days" after it occurred. D.E. 28 at ¶ 62.

Forward Motion claims that the transfer was made shortly after the debt was incurred. This is simply false—the debt was so overdue that Volvik Korea had to send formal demands for payment. D.E. 28 at ¶ 45; D.E. 25 at ¶¶ 32, 34. Similarly false is the allegation that Volvik USA did not receive equivalent value in exchange for the transfer. The amounts transferred were payment for goods long before received by Volvik USA, plainly an exchange of value. Thus, neither of these factors weighs in favor of inferring fraud.

Viewing the totality of the circumstances gives no reason for this Court to infer fraud. Volvik USA made a payment to a contractual counterparty for goods previously received. The obligation to pay for the goods was both overdue and predated creation of the purported obligation to Forward Motion. D.E. 28 at ¶¶ 45, 49. Volvik USA's payment of an older debt for which payment had been demanded before a newly created obligation is entirely within its discretion. This Court may be required to draw reasonable inferences in favor of Forward Motion, but it is not required to rewrite reality to fit Forward Motion's preferred interpretation. Because Forward Motion fails to raise the prospect of fraud above a wholly speculative level, Count XII must be dismissed.

## VII.    Count XIII – Negligence

Choi seeks damages for negligence on the theory that Volvik Korea's reporting the Fraudulent Wires resulted in termination of his bank accounts and credit cards by Bank of America.

Florida law does not recognize a cause of action for negligence grounded solely on economic harm; bodily injury or property damage is required. *See Marino v. Phaidon Int'l, Inc*., No. 22-14027-CV-CAN, 2022 U.S. Dist. LEXIS 146416, at *6-8, 2022 WL 9505265 (S.D. Fla. Aug. 16, 2022), *adopted Marino v. Phaidon Int'l, Inc*., No. 22-14027-CIV-CAN, 2022 U.S. Dist. LEXIS 188324, 2022 WL 9425947 (S.D. Fla. Oct. 14, 2022) (explaining Florida's economic loss rule and citing cases). "[P]arties do not ordinarily owe a negligence-based duty to protect one another from purely economic harm." *Id*. at *7. A plaintiff must plead extraordinary circumstances to justify imposition of a negligence-based duty to protect from economic harm. *Id*. at *6.

Choi's claimed losses are purely economic, if they exist at all. Under Florida law, Volvik Korea owed no duty to Choi to protect against economic harm and Choi has not alleged any extraordinary circumstances which would justify imposing this duty. Because there is no duty and recovery is barred by the economic loss rule, Count XIII must be dismissed.

## VIII.   Count XIV – Tortious Interference

Choi seeks damages on the theory that Volvik Korea's purportedly "intentional and wrongful" reporting of the Fraudulent Wires resulted in termination of his bank accounts and credit cards by Bank of America.

A tortious interference claim requires (1) the existence of a business relationship, (2) defendant's knowledge of the relationship, (3) defendant's intentional and unjustified interference with the relationship, and (4) damages to the plaintiff. *Astro Tel, Inc. v. Verizon Fla., LLC*, 979 F. Supp. 2d 1284, 1296 (M.D. Fla. 2013).

The interference must be intentional and direct. *Id.* at 1297-1299; *Lawler v. Eugene Wuesthoff Mem'l Hosp.*, 497 So. 2d 1261, 1263 (Fla. 5th DCA 1986) (dismissing interference claim where impact to doctor/doctor and doctor/patient relationships was only an indirect consequence of hospital's terminating doctor's staff privileges); *Ibp, Inc. v. Hady Enters.*, 267 F. Supp. 2d 1148, 1165 (N.D. Fla. 2002) (finding defendant not liable for interference where its intent was not to frustrate plaintiff's business and the actual direct interference was the result of action by a third party); *Merrill Lynch Bus. Fin. Servs. v. Performance Mach. Sys. U.S.A.*, 2005 U.S. Dist. LEXIS 7309, *15-21, 18 Fla. L. Weekly Fed. D 489 (S.D. Fla. 2005) (dismissing interference claim where plaintiff alleged defendant's actions at best indirectly affected plaintiff's business relationships).

Florida law recognizes that certain interested parties have a qualified privilege to interfere with a business relationship to protect their own economic interests. *M & M Realty Partners at Hagen Ranch, Ltd. Liab. Co. v. Mazzoni*, 982 F.3d 1333, 1339 (11th Cir. 2020) (explaining privilege and its purpose).

For purposes of this motion only, Volvik Korea will assume that Choi had a business relationship with Bank of America and that Volvik Korea was aware of it (though Volvik Korea disputes this). Choi offers the pure conclusion that Volvik Korea's notifying Bank of America regarding the Fraudulent Wires was an intentional and unjustified interference into Choi's banking relationship. Volvik Korea notes that Choi's claim fails to mention that the second Fraudulent Wire was directed out of Volvik USA to either Choi's personal or business account, without legitimate purpose or authorization. D.E. 25 at ¶¶ 74-75.

Regardless, the Counterclaim does nothing to allege that Volvik Korea intended to cause Bank of America to terminate Choi's own accounts. At best the Counterclaim permits the inference that Volvik Korea sought to keep funds from being improperly transferred to Forward Motion, Choi, and Shin. D.E. 28 at ¶ 67 (alleging Volvik Korea froze the wires "in order to have the money returned."). Nothing suggests that Volvik Korea intended that Bank of America would do anything to Choi's accounts beyond stopping a single transfer into them.

Further, any action taken by Bank of America beyond freezing the Fraudulent Wires was an indirect consequence of Volvik Korea's reporting. Volvik Korea had no part in Bank of America's decision to take further action against Choi's accounts. This kind of indirect consequence is insufficient to support a tortious interference claim and Count XIV must be dismissed.[7]

Even assuming *arguendo* that Volvik Korea's actions constituted interference, it is protected by the qualified privilege. Volvik Korea reported the Fraudulent Wires to prevent theft and misappropriation of Volvik USA's property. As a shareholder in Volvik USA, Volvik Korea has an economic interest in the Fraudulent Wires and had a privilege to interfere with them to prevent what it understood was an ongoing looting of Volvik USA's funds for the personal profit of Choi. Choi does not plead any of the exceptions to this

---

[7] "[A] cause of action for interference which is only negligently or consequentially effected does not exist" under Florida law. *Performance Mach. Sys.*, 2005 U.S. Dist. LEXIS 7309, at *21. Choi claims that Volvik Korea's acts were negligent, and this also precludes his tortious interference claim.

privilege.[8] Therefore, Volvik Korea is immune as a matter of law and Count XIV must be dismissed.

### Conclusion

Counter-Plaintiffs' claims fail to rise beyond speculation, neglect to plead necessary elements, are contradicted by other allegation of the Counterclaim, or are otherwise barred as a matter of law. Therefore, the Counterclaim should be dismissed for failure to state a claim.

WHEREFORE, Volvik Inc. respectfully requests this Court dismiss the Counterclaim, D.E. 28, and award any other such relief as deemed just and proper.

*/s/ David A. Meek II*
David A. Meek II, Esq.
Florida Bar No. 59314
Ian T. Johnson, Esq.
Florida Bar No. 1026225
LOSEY PLLC
1420 Edgewater Dr.
Orlando, FL 32804
(407) 906-1605
dmeek@losey.law
ijohnson@losey.law
docketing@losey.law

### LOCAL RULE 3.01(g) CERTIFICATE

I hereby certify that on prior to filing this motion, I conferred in good faith with opposing counsel and the matters raised in this Motion were not resolved through such conferral.

*/s/ David A. Meek II*
David A. Meek II, Esq.
Florida Bar No. 59314

---

[8] For a more comprehensive discussion of the exceptions to the privilege, see Volvik Korea's Response to Defendant's Motion to Dismiss Amended Complaint.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2022, a true and correct copy of this Motion

was filed via the ECF system, causing a copy to be served on all counsel of record.

*/s/ David A. Meek II*
David A. Meek II, Esq.
Florida Bar No. 59314